[Crim. No. 9863. First Dist., Div. Four. Feb. 9, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS RICHARDSON, Defendant and Appellant.

**COUNSEL**

Henry Hill, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DEVINE, P. J.**—Appellant Louis Richardson, together with one Leslie Henry, was charged with the commission of robbery and assault with means likely to produce great bodily injury. Both crimes were made the subject of separate counts in respect of the victims, so that four felonies in all were charged. In addition, it was charged that appellant had intentionally inflicted great bodily injury upon both of the victims. The charge, if found true, would set the minimum term in the state prison at 15 years, under Penal Code section 213.

The jury found appellant guilty of the four felonies, and found it to be true that appellant did, with the intent to inflict such injury, inflict great bodily injury on each of the victims of the robbery. The charge of prior convictions against appellant was dismissed. It was ordered that execution on the assault charges (Pen. Code, § 245) be stayed pending appeal and service of sentence on the charges of robbery. The jury was unable to reach a verdict as to the codefendant, Henry.

### Facts

On September 20, 1970, Mrs. Marguerite Brinegar and Mrs. Rachel Denslow ate dinner together at Kip's Restaurant in Berkeley. Sometime after 7 p.m. (about dusk), the two walked down Durant Street to their car, which was parked at the corner of Durant and Dana Streets. Upon approaching their car, the two ladies heard the sound of running footsteps behind them. Suddenly, Mrs. Brinegar felt a heavy blow on her back in the area of her neck, and she "crumpled to the ground." A man attempted to pull her purse from her, but she held on to it; she was

pulled into the street, hanging on to the purse. Finally, Mrs. Brinegar was forced to give up her purse; she got to her feet, screaming.

At the same time that Mrs. Brinegar was attacked, another man struck Mrs. Denslow on the back. Mrs. Denslow testified that as a result of the blow, she was terribly stunned and she fell across the front of her car. Her purse was taken off her arm.

The attackers had stolen a blue floral print purse from Mrs. Denslow; and a black wicker purse containing a smaller black beaded purse, a black satin coin purse, a black leather credit card holder and a beige coin purse (containing keys) from Mrs. Brinegar.

During the struggle for her purse, Mrs. Brinegar was able to get a good look at her assailant. She testified that he was a young Negro male wearing whitish pants, a blue nylon jacket and a black gaucho hat.

After the attack, the assailants fled westward, then circled back, and disappeared down Dana Street. At this point, a bicyclist stopped and asked the two ladies what had happened; he was told where the assailants had gone and gave pursuit. Several other men approached the ladies and offered assistance. At this point, Officer Eckwall, a University of California policeman, drove up in a police car (with two police employees in the back seat). Upon being informed of what had happened, he proceeded south on Dana Street in search of the assailants. The bicyclist and several other bystanders followed the policemen down Dana Street, then west on Channing Street.

Officer Eckwall testified that he saw two suspects who matched the description given by Mrs. Brinegar. One suspect was wearing a black gaucho hat, and a blue nylon jacket. This man was identified, at trial, as appellant Richardson. Officer Eckwall called to the suspects to stop. They looked in his direction; then Richardson began walking northbound, and the other man began walking rapidly eastbound. After Richardson had walked about 20 feet, he turned and came toward Officer Eckwall. The other man walked 20 to 50 feet away, and then returned, apparently because his path was blocked by the bystanders who had followed the police car. Officer Eckwall informed Richardson that he was suspected of committing a crime and "patted him down," searching for weapons. Appellant was not informed of his rights at this time. In the meantime, David Smith, one of the group who had offered assistance to the victims and had remained with them, walked to where Richardson and his codefendant, Henry, were being held; he returned to the ladies and brought them to the scene. At this point, Mrs. Brinegar identified Richardson as the man

who had attacked her; at trial, Mrs. Brinegar again identified Richardson as her assailant.

Shortly after Mrs. Brinegar had identified appellant, Officer Phelps of the Berkeley Police Department arrived on the scene. He pat-searched each of the suspects, but found nothing. Officer Phelps delivered Henry to the Berkeley Police Department, where he was searched and advised of his rights. Officer Eckwall transported Richardson to the Berkeley Police Department, where he was searched. The search uncovered a black beaded purse, and a black leather identification holder containing credit cards and checks belonging to Mrs. Brinegar, which had been hidden under appellant's shirt.

All of the purses stolen were eventually recovered. Smith found one of the coin purses in some bushes near the place where appellant was apprehended. A search on the following day uncovered another wallet or clasp-type purse, Mrs. Brinegar's keys and Mrs. Denslow's blue purse.

At trial, Mrs. Brinegar testified that, as a result of the attack upon her, she sustained injuries, which are described below.

Mrs. Denslow testified that, as a result of the blow she received from her attacker, she was stunned for an instant or two. She did not know if she was unconscious, but her further testimony makes it fairly clear that she was not.

### The Robbery Verdicts

■ A reading of the statement of facts given above ought to be persuasive to anyone that appellant was guilty of the robberies committed on the two women (in the case of Mrs. Denslow, on the proposition that appellant and the other man, whether it was Henry or someone else, were acting in concert). Appellant argues, however, that the identification of appellant by Mrs. Brinegar was constitutionally infirm, because appellant did not have the services of counsel at the time and ■ because the confrontation was unnecessarily suggestive. ■ But a prompt, in-the-field identification outweighs the need for counsel and is more apt to be reliable than one that is the result of a later confrontation. (*People* v. *Rodriguez,* 10 Cal.App.3d 18, 29-30 [88 Cal.Rptr. 789].) There is no constitutional ban upon at-the-scene identifications. (*People* v. *Smith,* 13 Cal.App.3d 897, 909 [91 Cal.Rptr. 786]; *People* v. *Rodriguez, supra,* at pp. 29-30; *People* v. *Scoglio,* 3 Cal.App.3d 1, 6 [82 Cal.Rptr. 869]; *People* v. *Colgain,* 276 Cal.App.2d 118, 125-126 [80 Cal.Rptr. 659]; see also *Russell* v. *United States,* 408 F.2d 1280, 1284.) In this case, Mrs. Brinegar identified appellant not later than 30 minutes after the

robbery. There had been an immediate pursuit of the robbers and appellant was stopped not more than three or four blocks from the scene of the robbery. Besides, the confrontation was not arranged by the police but by the spectator Smith.

■ As for the second point, the alleged suggestiveness, we hold that, considering the totality of the circumstances (*People* v. *Colgain, supra,* at p. 125), the point is without merit. Mrs. Brinegar had a good opportunity of viewing her assailant; she struggled with him for one or two minutes; she described the clothes accurately. But besides all of this, the fact that when appellant arrived at the police station and was searched, he had in his possession Mrs. Brinegar's black beaded purse and her identification cards and checks, establishes without doubt that the identification was correct.

It is argued that the prosecution suppressed evidence, that is, that Mrs. Brinegar's black wicker purse was found at a point somewhat beyond that at which appellant was arrested. But there is nothing in the record which establishes just where the purse was found and, anyway, the wicker purse had been merely a container for the smaller beaded one which was in appellant's possession.

The verdicts on the robbery counts are sustained.

### The Counts of Violation of Penal Code, Section 245

■ From a practical standpoint, it is not particularly important whether the violations of Penal Code section 245 remain because, the robberies having been affirmed, the sentences on the section 245 verdicts are suspended. However, the trial court did fail to instruct on the lesser and included offense of simple assault. Such instruction must be given by the court, *sua sponte,* whenever the evidence would admit of conviction of the lesser offense.[1] (*People* v. *Rupert,* 20 Cal.App.3d 961, 968 [98 Cal. Rptr. 203]; *People* v. *Cooper,* 268 Cal.App.2d 34 [73 Cal.Rptr. 608].) This is not a case in which the defendant, if guilty at all, was guilty of the greater offense, as was the case in the decisions where a deadly weapon was used. (*People* v. *McCoy,* 25 Cal.2d 177, 187 [153 P.2d 315] [use of knife]; *People* v. *Coleman,* 8 Cal.App.3d 722, 733 [87 Cal.Rptr. 554] [armed robbery, gun used]; *People* v. *Tiffith,* 12 Cal.App.3d 1129, 1134 [91 Cal.Rptr. 176] [robbery, gun used; at trial, defendant claimed blackout]; *People* v. *Lovely,* 16 Cal.App.3d 196, 204 [93 Cal.Rptr. 805]

---

[1]Although appellant's brief mentions only failure to give instruction on simple assault, *sua sponte,* we note that the court refused the more appropriate instruction proposed by the defendant on the offense of battery.

[assault with knife]; *People* v. *Groce,* 18 Cal.App.3d 292, 295 [95 Cal. Rptr. 688] [assault with knife; at trial, defendant denied any attack].)

In the case before us, the verdicts as rendered could be sustained if the jury had been instructed properly. But since the jury was not allowed a choice of convicting of lesser assaults or battery, the judgment must be reversed insofar as it includes two convictions of violation of Penal Code section 245.

## Application of Penal Code Section 213

■ Section 213 of the Penal Code, enacted in 1967, has to do with increased punishment in cases of robbery under certain circumstances. In the case of robbery of the second degree (the applicable degree in this case), the punishment is for not less than one year, but the section goes on to read as follows: "The preceding provisions of this section notwithstanding, in any case in which defendant committed robbery, and in the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life." (Stats. 1967, ch. 149, § 1.)

The jury found that appellant inflicted great bodily injury on Marguerite Brinegar, with the intent to inflict such injury, and made the same finding as to Rachel Denslow, although the evidence shows that appellant personally inflicted no injury at all on Mrs. Denslow. Although, as we have said above, appellant was properly convicted of robbery in the Denslow case because of the concerted action of the two assailants, there would be question, considering the express requirement of section 213 of the Penal Code, whether appellant could be held to have *intended* to inflict great bodily injury on Mrs. Denslow, unless the circumstances showed at least an implicit agreement between the robbers, not only to take property from the victims by force, but also to inflict great bodily injury upon each of the victims. But we need not answer that question in this case.

In fact, great bodily injury within the meaning of section 213 was not done to Mrs. Denslow. She was struck one blow on her back and neck, which she described as "terrific." This caused her to fall over the front of the car. Although she had said at the preliminary examination that she had been knocked unconscious, she testified at the trial, when asked whether there was any time when she was not aware of what was going on after the blow: "No. I think I was aware most of the time, or at least shortly."

Mrs. Denslow did not testify, nor did any physician or anyone else, as to sequelae of the single blow.

Mrs. Brinegar, after being struck and knocked down, held on to her purse and kept struggling, and was pulled out into the street, until finally she had to let go. Her injuries consisted of large areas of deep black which lasted for about three weeks, and an arm which was so sore that she thought it had been "pulled out of the socket" and which she could not use to any advantage for several days. She did not see a doctor about her injuries.

It is unnecessary to decide whether, had proper instructions been given, the increased punishment would be sustainable because of the infliction of "great bodily injury on the victim of the robbery." Such instructions were not given. In fact, no instruction whatever was given on the subject matter of Penal Code section 213 in the body of the charge to the jury. The court informed the jury of the charge, as made in the information, "that at the time of the commission of the offenses the said defendants, with intent to inflict such injury, inflicted great bodily injury upon Marguerite Brinegar and Rachel T. Denslow, respectively, the victims of said robberies." The next reference to the subject matter is in the description of the possible verdicts, and reads: "We further find that the defendant Louis Richardson, 'did' or 'did not with the intent to inflict such injury inflict great bodily injury on Marguerite Brinegar,' and you will cross out the non-applicable word. That form of verdict would be used if, for example, you were to find the defendant Richardson guilty of robbery as charged in the first count. There is a similar verdict as to the defendant Richardson as to the second count, and almost the same language. That applies, of course, to the alleged victim, Rachel Denslow."

An instruction which correctly refers to the necessity of specific intent to inflict great bodily injury in order to allow an affirmative verdict on the issue was refused.[2] Because specific intent is an essential ingredient of the subject matter of section 213 of the Penal Code, it was error to refuse the instruction. This was particularly likely to cause confusion because of the inclusion in the information of the charges of violation of Penal Code section 245. The jury was instructed correctly as to that section, as follows: "Actual bodily injury is not a necessary element of the crime, but

---

[2]Defendant's proposed instruction reads: "The District Attorney has alleged that in connection with Counts One and Two, charging robbery, the defendant with intent to inflict such injury, did inflict great bodily injury on Marguerite Brinegar and Rachel Denslow.

"In order for you to find this part of the Information to be true, you must determine that at the time of the perpetration of the robbery the defendant had a specific intent to inflict great bodily injury, and did in fact inflict such great bodily injury. People v. Hood, 1 C.3d 444, 458."

if such injury is inflicted its nature and extent are to be considered in connection with all the evidence in determining whether the means used and the manner in which it was used were such that they were likely to produce great bodily injury." A single blow may be *likely* to produce great bodily injury, although there is no specific intent in the mind of the assailant to inflict great bodily injury. An example is in this very case. The elderly women who were struck might, in falling, have sustained great bodily injury. But section 213 does not cover what might have happened, or even what may have been likely. Unless a careful explanation is given to the jury as to the distinction between sections 245 and 213 of the Penal Code, confusion is possible or even probable.

Besides the denial of the specific intent instruction, there is also to be considered the failure of the instructions to define "great bodily injury." The statute itself does not provide a definition. But the jury must receive guidance from the court. Although the jury in the present case did not request an instruction on the definition of "great bodily injury," perhaps because of confusion with section 245, as noted above, a thoughtful jury may very well require a definition, as the jury did in *People* v. *Wells,* 14 Cal.App.3d 348 [92 Cal.Rptr. 191]. In the *Wells* case, the judge (who had previously covered the necessary ingredient of specific intent) answered the jury's inquiry by saying that the term " 'refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury' " (at p. 360). It seems that it would be correct to exclude "moderate harm" as well. *(Id.,* at p. 359, fn. 8; *Froedge* v. *State,* 249 Ind. 438 [233 N.E.2d 631].)

We find it impossible to follow respondent's conclusion that "the intent is effectuated if the robber is punished more severely *any time* he inflicts injury upon the victim, since that injury is what logically differentiates his conduct from that of the ordinary robber. Since the victim here testified she did suffer injury, the jury could properly find that the appellant did inflict great bodily injury within the meaning of Penal Code section 213." This conclusion would eliminate the word "great" from the statute. Moreover, it would bring about the strange result that every second degree robbery accomplished by force, which caused any injury at all, would be more severely punished than a first degree robbery even though the latter were accomplished at gunpoint, the robber exhibiting firm intent to kill if his demands were not met. That the Legislature intended a substantial injury in the relevant paragraph of section 213 is shown by comparison with a similar statute relating to punishment for rape (Pen. Code, § 264), which was enacted contemporaneously. (Stats. 1967, ch. 151, § 1.) The increased punishment, a minimum of 15 years in state prison, is to be imposed if it is charged and found to be true that the rapist

intended to inflict and did inflict great bodily injury on the victim. Since rape by force or violence necessarily includes *some* injury, it must have been intended by the Legislature that the enlarged minimum term, from 3 to 15 years, should occur when a substantial injury, in addition to that which must be present in every case of rape, must have been specifically intended and actually inflicted.

In the case of felonies, it is the minimum rather than the maximum term which ordinarily is of chief importance to the prisoner. The maximum punishment for many felonies is life imprisonment, and this is so for second degree robbery, of which appellant stands convicted. The maximum in his case is the same, to cite examples, as that for first degree robbery (Pen. Code, § 213), for rape (Pen. Code, § 264), for murder of the second degree, and even for murder of the first degree unless the jury chooses to impose the death penalty (Pen. Code, § 190). The minimum term for second degree murder is five years (Pen. Code, § 190), ten years less than that under section 213. For putting out an eye, a form of mayhem (Pen. Code, § 203), the maximum is 14 years (Pen. Code, § 204) and the minimum 6 months (Pen. Code, §§ 18a, 18b). Therefore, the extraordinary enlargement of the minimum term for second degree robbery, from 1 year to 15 years when great bodily injury is intended and inflicted, is a grave matter. It cannot be permitted to stand, in the face of deficient instructions.

The Attorney General suggests that if the infliction of injury cause is to be dropped from each count of robbery, appellant be resentenced, the degree of robbery to be determined (the verdicts of the jury did not specify the degree). The suggestion is accepted. Therefore, appellant is remanded to the superior court for sentencing on the two counts of violation of section 211 of the Penal Code, the degree of the crime to be second degree.

The court will strike from the judgment and sentence any reference to infliction of great bodily injury or intent to inflict such injury. The sentences on the two robbery counts shall be concurrent, as they were in the original sentence.

The judgment, insofar as it finds violations of section 245 of the Penal Code, is reversed.

Rattigan, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.