[Crim. No. 14217. Fourth Dist., Div. Two. Aug. 12, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMY SMITH, Defendant and Appellant.

582

**COUNSEL**

Jeannine M. Ushana, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.\***—Defendant was convicted by jury of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and it was found to be true that in the commission of the offense defendant inflicted great bodily injury within the meaning of Penal Code section 12022.7. Defendant was sentenced to state prison for the midterm of three years plus three additional years for the great bodily injury finding, for a total of six years.

### FACTS

Around 11 p.m. on November 20, 1979, Thomas Cartwright (a six feet six inches trucker) was making a telephone call from a telephone booth at a truck stop in Colton. In an adjacent booth defendant (five feet nine inches) was also making a telephone call, screaming at the top of his lungs into the phone. Cartwright asked defendant to keep the volume down and defendant replied "mother fuck you." Cartwright told defendant "Well, just shut up then, goddamn it."

Defendant screamed at Cartwright, "I'll kill you, white honkie mother fucker and son of a bitch." Defendant kicked the door on Cartwright's booth open and the door hit Cartwright. As the door opened defendant shouted, "Don't tell me to shut up, you white honkie, mother fucker."

Defendant returned to his telephone booth, but Cartwright grabbed him by his head and screamed, "You black son of a bitch, you goddamned nigger." He added, "We got to live around these truck stops, and ... people like you come around here and raise Cain and Holy Hell and starting trouble." Cartwright then slung defendant down and defendant stumbled away. Before he left, defendant said, "I'll get you white honkie, you mother fucker. I'll get you." He added that if he had a gun he would shoot Cartwright.

---

*Before Gardner, P. J., Kaufman, J., and McDaniel, J.

The telephone booths are just outside a restaurant at the truck stop. Cartwright went into the restaurant. What defendant did is unclear. Defendant had been talking to his brother on the telephone. This brother and another adult arrived in a car at the truck stop. Defendant reached in the vehicle and pulled out a club through the open window. Armed with the club and intending to get even with Cartwright, defendant entered the restaurant.

Cartwright had gone into the restaurant and ordered soup and coffee. Some 10 to 15 minutes after the incident at the phone booth Cartwright began to take a sip of his coffee when defendant, approaching from Cartwright's back, hit him on the side of the head with a club. Cartwright looked up and defendant struck him twice more, breaking the club. Cartwright went under the table and defendant began to beat on the table. When Cartwright got up to run he was stabbed in the side with a butcher knife. Cartwright ran to the other end of the restaurant and heard a gunshot. Cartwright thought he had been shot but, apparently, a restaurant patron fired a gun to break things up. With the gunshot, defendant and his brother fled.

Cartwright was taken to the hospital where X-rays showed he had suffered a linear skull fracture and a scan showed an intercranial hemorrhage. Surgery was required which entailed removing a bone from Cartwright's head and draining blood from the brain area.

Cartwright suffered a contusion to the brain. He was confined to the intensive care unit for several days and to the hospital for 29 days. He had diminished strength and coordination in his right arm as a result of the injury to the brain and was on antiseizure medication at the time of the trial. Untreated, Cartwright may have died from the injury.

On December 4, 1979, Colton Police Detective Crowe went to the Orange Blossom Motel in San Bernardino and advised defendant of his *Miranda* rights. Defendant said he understood these rights and agreed to speak with the officer. Defendant related he had an argument with Cartwright by the phone booth and Cartwright had struck him. Thereafter defendant said he went to the parking lot, took a club from a car driven by his brother, went into the restaurant and hit Cartwright on the head three times with the club.

On appeal defendant contends: (1) the court erred in enhancing his sentence for the intentional infliction of great bodily injury; (2) the

court erred in refusing an instruction concerning "heat of passion"; (3) the court erred in denying defendant's motion to amend the information to add a charge of battery and in denying battery instructions; and (4) the failure to prosecute Cartwright for his attack on defendant constitutes unlawful selective prosecution of defendant because he is black. We affirm the trial court.

## I

### BODILY INJURY SENTENCE

■ Defendant contends that it was error, as a matter of law, to increase his sentence pursuant to Penal Code section 12022.7[1] for the infliction of great bodily injury. Defendant observes that the added three years of punishment required by section 12022.7 is not applicable where "infliction of great bodily injury is an element of the offense of which he is convicted." Defendant then argues that the gravamen of assault with a deadly weapon involves great bodily injury and that the penalty under section 12022.7 can only be applied to felonies which do not involve great bodily injury as the gravamen of the offense. He concludes with the assertion that the penalty for assault with a deadly weapon already comprehends punishment for the infliction of great bodily injury and thus the three-year sentence he received pursuant to section 12022.7 was erroneous. Defendant is not correct.

To be guilty of the offense described in Penal Code section 245, subdivision (a), it is not necessary to inflict great bodily injury. The pertinent portion of that section reads: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable . . . ." The actual infliction of injury is not required by the statute

---

[1]Penal Code section 12022.7 provides:

"Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"As used in this section, great bodily injury means a significant physical injury.

"This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleadings and admitted or found to be true by the trier of fact."

in order to violate its prohibition. (*People* v. *Brown* (1980) 110 Cal. App.3d 24, 34 [167 Cal.Rptr. 557]; *People* v. *Richardson* (1972) 23 Cal.App.3d 403, 410-411 [100 Cal.Rptr. 251].) In contrast, the added punishment required by section 12022.7 can only be applied where great bodily injury is actually inflicted. The pertinent portion of the statute reads: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury . . . ."

The assault with a deadly weapon statute is directed at punishment of the *use* of deadly weapons or acts of force *which create a danger* of serious injury to the victim. Section 245 "focuses on force *likely* to produce harm, it is immaterial that the force actually resulted in no harm whatever." (*People* v. *Wingo* (1975) 14 Cal.3d 169, 176 [121 Cal.Rptr. 97, 534 P.2d 1001]; original italics.) "Where the assault is committed with a deadly weapon, or with force likely to produce great bodily injury, the aggravated assault is complete upon the attempted use of the force." (*People* v. *Yeats* (1977) 66 Cal.App.3d 874, 878 [136 Cal.Rptr. 243].) In contrast, Penal Code section 12022.7 punishes the intentional *actual infliction* of great bodily injury. These are two separate and distinct matters. Contrary to defendant's argument, the penalty for an assault with a deadly weapon does not already contemplate punishment for the infliction of great bodily injury.

An earlier version of section 12022.7 specifically stated that it did not apply to a section 245 assault. Subsequently, but prior to the instant offense, the Legislature amended section 12022.7 to delete the section 245 exception. In our view this is an apparent legislative recognition of the obvious fact that the offense proscribed by section 245 does not contain as an element the intentional infliction of great bodily injury. The exceptions which remain intact each involve the *infliction* of great bodily injury (murder, manslaughter, arson causing great bodily injury and unlawfully causing a fire which causes great bodily injury). In addition, of course, the penalty of section 12022.7 is excepted whenever *infliction* of great bodily injury is an *element* of the offense.

A comparison of section 245 and section 12022.7 fails to bear out defendant's contention. The application of the three-year punishment specified in section 12022.7 for *infliction* of great bodily injury was not error.[2]

---

[2]We have not specifically discussed the various cases cited by defendant because none of them embrace the instant appeal issue. (E.g. see: *People* v. *Caudillo* (1978) 21

## II

### HEAT OF PASSION INSTRUCTION

Defendant contends the court erred in refusing to give the following instruction: "If you find that Mr. Smith, the defendant was adequately provoked so that he could use force against Mr. Cartwright in self-defense, then the right would exist until a reasonable man would have cooled down, i.e., regained a rational state of mind.

"Whether or not there was a reasonable opportunity for the passion to cool, depends upon whether or not, under all the circumstances of the particular case, there has been such a lapse of time since the provocation was received that the mind of the ordinary reasonable man would have cooled sufficiently so that action once more would be directed by reason rather than by passion."

Penal Code section 245 is a general intent crime. (*People* v. *Wingo, supra,* 14 Cal.3d at p. 177.) Recognizing this debility, defendant nevertheless argues that the proffered instruction would properly apply to an enhancement for infliction of great bodily injury pursuant to Penal Code section 12022.7 because that section requires an "intent to inflict such injury." The proffered instruction is not by its terms directed at the great bodily injury enhancement but rather at guilt or innocence of the assault. Thus, it was correct not to give the instruction.

Defendant places his reliance on general cases such as *People v. Sears* (1970) 2 Cal.3d 180, 189-190 [84 Cal.Rptr. 711, 465 P.2d 847], which held that "[a] defendant is entitled to an instruction relating particular facts to any legal issue." He also relies on those cases which have required the giving of defense instructions founded on evidence

Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274] [concerned with defining great bodily injury and, in passing, mentioned that § 12022.7 applies to all felonies which "do not necessarily involve" great bodily injury]; *People* v. *Gray* (1979) 91 Cal.App.3d 545 [154 Cal.Rptr. 555] [attempted murder plus § 12022.7 okay]; *People* v. *Walls* (1978) 85 Cal.App.3d 447 [149 Cal.Rptr. 460] [§ 12022.7 applies to burglary even though injury inflicted *after* entry]; *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396] [involves § 12022.7 enhancement of subordinate terms for consecutive offenses]; *People* v. *Yancy* (1959) 171 Cal.App.2d 371 [340 P.2d 328] [under § 245 the "likelihood" force will result in great bodily injury is gravamen of crime but evidence of an actual blow not necessary to violation of section]; *People* v. *Fuller* (1975) 53 Cal.App.3d 417 [125 Cal.Rptr. 837] [pre § 12022.7 case but notes § 245 separate crime from the battery which occurs if the attempted injury is successfully inflicted].)

which "may not be of a character to inspire belief." (E.g. *People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281].)

Defendant's testimony was that he had been stranded at the truck stop by some girls. He called the Colton police but they would not give him a ride. He then called his wife. He said he was yelling but not "cussing." Then he said he was not, by his view, even talking loudly on the phone.

Defendant noticed Cartwright enter the adjacent phone booth. Cartwright seemed slightly upset during his conversation on the telephone. Defendant then admits to being upset and yelling. Cartwright came out of his own booth and said, "'Well, hey, fucking nigger, shut your damn mouth.'" Defendant responded, "'Hey, man, I don't want any hassle. I'm stranded out here. I'm trying to get home. I just don't want no hassle.'" Defendant then returned to a telephone conversation with his wife. Then defendant started talking to his brother.

Next, according to defendant, Cartwright "came and grabbed me, you know, and he just—you know, he said, 'Well, fucking nigger, I told you to shut your fucking mouth.' . . . he grabbed me, threw me down."

Defendant said there were about three other truck drivers, dressed like cowboys, in the vicinity. After Cartwright slung defendant to the ground, Cartwright kicked defendant in the ribs and said, "'Hey, fucking nigger, you know, you better get your fucking ass out of here before we kill you.'" Cartwright then went in the restaurant and defendant saw the other men "patting him on the back like he had done something big."

Defendant then was "getting . . . back together . . . because my ribs was hurting." Defendant's brother arrived in a car (this is the same brother who was at the other end of the telephone when Cartwright "grabbed" defendant). Defendant was going to get in the car "but then I seen the stick, you know, it just—I was just, you know—made me so mad I just went on off, you know. . . . I just went in and hit him. I didn't try to kill him or anything like that. I just went to get him back for what he did to me. He had no reason to say anything to me from the beginning."

On cross-examination defendant explained he entered the restaurant and hit Cartwright over the head three times, breaking the "stick" on

the third blow. He denied beating on the table. He heard a gunshot and left. Defendant said he was mad and his purpose in entering the restaurant was to hit Cartwright, to get even and get back at him. "Well, true, just to get him for what he did to me, because he had no reason doing it, you know. I mean I should have called the police but it just wasn't on my mind at that time. My ribs was paining and I was just pissed off because this guy didn't have no reason putting his hands on me, let alone say anything to me. He was in the wrong."

On this record, defendant now asserts that he was in danger of Cartwright returning and injuring him further. He also asserts that there was evidence that he acted in the heat of passion and before expiration of a reasonable cooling off period.

■ "[T]he right of self-defense is based upon the appearance of imminent peril to the person attacked. When the danger has passed and the attacker has withdrawn, there can be no justification for the use of further force." (*People v. Perez* (1970) 12 Cal.App.3d 232, 236 [90 Cal.Rptr. 521].) "The right to have a jury instructed on self-defense must be based upon more than imagined facts or inferences [citation], and it is not error in any event to refuse to instruct on a defense theory not supported by the evidence. [Citation.]" (*Id.*)

■ The defense evidence doesn't provide even a glimmer of self-defense. Thus, self-defense instructions were not required even though standard self-defense instructions were given. Defendant simply was in no peril with Cartwright in the restaurant and defendant's brother at the scene, with a car, to drive defendant away from the truck stop.

The instruction under review seeks to extend the period in which defendant could have exercised the right of self-defense to include a cooling off period. It is obviously directed at the assault rather than the enhancement. Self-defense is at least a suspect concept as applied to a Penal Code section 12022.7 enhancement as the self-defense should be directed at the underlying crime. Defendant has also failed to explain how the heat of passion theory developed in the arena of voluntary manslaughter applies to an enhancement finding and how it would work. The instruction, of course, lacks any acceptable definitions of "adquately provoked" and "passion." The instruction is, basically, confusion. It takes the self-defense concept, which was not reasonably available to defendant, and haphazardly mixes it with a concept applicable to voluntary manslaughter. As best we can tell from this

instruction, it was an effort to instruct the jury that it could find that defendant had clubbed Cartwright over the head in self-defense.

We have had difficulty understanding this instruction within the framework of the legal position it is supposed to represent. The only authority presented to the trial court for the instruction was a section of a criminal law textbook on manslaughter.

We are satisfied that the instruction is not required by the facts of this case. We are also satisfied that this particular instruction is a non sequitur without any support in law that it be given, at least under the facts and circumstances of this case. The court did not commit error in refusing to give the instruction.

III

BATTERY

Defendant contends the court erred in denying a defense motion to amend the information to charge battery (Pen. Code, § 243) and erred in refusing proffered defense instructions on battery. Defendant also contends his new trial motion should have been granted because of these claimed errors.

Defendant argues the court erred in denying a defense motion to amend the information to add a charge of battery. The People contend that defendant seeks to usurp the executive function vested in the prosecution to determine the crimes to be charged. The People argue defendant seeks to invade the separation of powers doctrine.

"The choice of the appropriate offense to be charged is . . . within the discretionary power of the prosecuting attorney." (*People* v. *Smith* (1975) 53 Cal.App.3d 655, 659 [126 Cal.Rptr. 195].) In *Smith*, the People charged defendant with a Penal Code section 245 assault. Battery was not charged. Over the People's objection, the trial court allowed the defendant to plead guilty to the uncharged offense of battery. *Smith* concluded that "the court took it upon itself to charge the respondent [defendant] with an otherwise uncharged and nonincluded, although related, lesser offense than that which had been charged by the People. That action was unlawful; just as the executive may not exercise judicial power, so the judiciary is prohibited from entering upon executive functions." (At pp. 659-660; also see: *People* v. *Municipal*

*Court (Pellegrino)* (1972) 27 Cal.App.3d 193 [103 Cal.Rptr. 645, 66 A.L.R.3d 717], [determining that the decision on prosecution rests with the prosecuting officer] and *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 262-263 [137 Cal.Rptr. 476, 561 P.2d 1164] [acknowledging *Smith* and *Pellegrino* and their holdings enforcing "the allocation to the executive of the function of determining which persons are to be charged with what criminal offenses."].) Here, the trial court properly denied defendant's motion to amend the information to add the charge of battery.

■ Alternatively, defendant relies on *People v. Yancy, supra,* 171 Cal.App.2d 371, for the proposition that "it is reversible error to refuse requested instructions concerning battery, if there is a possibility of either battery or aggravated assault." This is not the holding of *Yancy.* Rather, *Yancy* held it was error to refuse requested instructions on a necessarily included lesser offense where the evidence supported giving such instruction. (At pp. 375-376.) In *Yancy* the defendant was charged with assault by means of force likely to produce great bodily injury and the trial court refused to give simple assault instructions.

Here defendant was charged with assault with a deadly weapon and sought battery instructions. Battery, however, is not an included offense in the crime of assault with a deadly weapon. (*People v. Fuller, supra,* 53 Cal.App.3d 417, 422.) Thus, *Yancy* is inapposite. Defendant also relies on *People v. Fuentes* (1946) 74 Cal.App.2d 737 [169 P.2d 391], in which the court said that battery was included in a Penal Code section 245 assault. *Fuentes* is wrongly decided and we clearly rejected and disapproved *Fuentes* in *People v. Yeats, supra,* 66 Cal.App.3d 874 at page 879. In *Yeats* we held that battery is not included in a Penal Code section 245 assault.

We are also directed to *People v. Lathus* (1973) 35 Cal.App.3d 466 [110 Cal.Rptr. 921], for the proposition that the jury should be instructed on Penal Code section 245 assault and on battery where the evidence is such that a conviction of either is possible. *Lathus* observed that battery is not a lesser and necessarily included offense of an assault with a deadly weapon and further that the information did not allege the assault resulted in an injury. The court noted that the posture of the case did not have the potential of exculpating defendant of the assault while laying the foundation for guilt of battery. The court also noted that battery had not been charged. *Lathus* simply determined that bat-

tery was not within the scope of the pleadings. *Lathus* does not establish the proposition defendant seeks from it.

Defendant is of the view that because there was evidence which could have supported a finding of guilt of battery, the failure to instruct on battery "skewed" jury deliberations toward guilt of assault plus treating the injury only within the terms of Penal Code section 12022.7. However, as we have previously observed, battery is not an instruction which is required on a charge of assault with a deadly weapon. Nor do we think battery is alleged in an information where the People allege an assault with a deadly weapon and then further allege the intentional infliction of great bodily injury in order to comply with the requisites of a Penal Code section 12022.7 enhancement. The trial court properly refused battery instructions.

It also follows, based upon our discussion above, that the trial court properly denied defendant's new trial motion as founded on the denial of the battery amendment and the battery instructions.

## IV

### SELECTIVE PROSECUTION

■ Defendant contends that he has been subjected to discriminatory prosecution. He premises this on the observation that the victim was not prosecuted for assault on defendant. He looks to the activity at the telephone booths and terms himself the victim of a battery, perhaps even the victim of an assault with a deadly weapon. He concludes that racial discrimination is at the heart of the prosecutorial decision to prosecute defendant but not his victim. The racial discrimination claim is devoid of record support.

This contention was not raised before the superior court and is spurious on the record before us. (Cf. *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44].)

Judgment affirmed.