Filed 11/14/14  P. v. Ferelli CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DINA FERELLI,<br><br>    Defendant and Appellant. | D064349<br><br><br>(Super. Ct. No. SCD244247) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Peter Quon and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

In October 2012, defendant and appellant Dina Ferelli was involved in an altercation with Tomas Delgado at a San Diego bar.  The jury found defendant guilty of

assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 1) and battery with serious bodily injury (§ 243, subd. (d); count 2). The jury also returned true findings on deadly weapon (§ 1192.7, subd. (c)(23)) and great bodily injury (§ 1192.7, subd. (c)(8)) allegations on both counts, and on a great bodily injury allegation (§ 12022.7, subd. (a)) on count 1.

Defendant contends that the trial court (1) failed to instruct the jury that it could consider Delgado's alleged prior threats in determining if defendant acted in self-defense; (2) improperly instructed the jury on mutual combat; and (3) misstated the elements of self-defense in its instructions to the jury. Defendant also contends that the section 12022.7, subdivision (a) allegation should be struck, as great bodily injury is an essential element of battery with serious bodily injury. For the reasons set out below, we disagree with these contentions and affirm the judgment of conviction.

BACKGROUND

A. *The Night of the Incident*

On a Saturday night in October 2012, defendant and three other women went out to various bars. At the end of the night, they ended up in the same bar (the Redwing Bar and Grill) as Delgado and his two friends.

At trial, the jury heard testimony from Delgado, both of the friends with him that night, defendant, all three women with her, the San Diego Police detective assigned to investigate the matter, and the doctor who treated Delgado's injuries.[2] The jury also

---

[1]     Unless otherwise noted, all statutory references are to the Penal Code.

[2]     All witnesses except defendant were called by the People.

viewed security camera footage from the bar, although the footage was of rather poor quality.[3] Not surprisingly, there was conflicting testimony about the events leading up to the instant altercation.

Both parties were drinking alcohol that night, although it appears from witness testimony that Delgado still fully possessed his faculties. Witnesses differed on how intoxicated defendant was, some saying she was pleasantly drunk, but not slurring her words, while defendant herself testified that she was "feeling the effects of alcohol," but was not "weaving" or "stumbling." The other members of defendant's party testified that they themselves were "buzzed," a "six" on a 10-point scale of intoxication, or "definitely hammered."

B. *Initial Confrontation*

At some time after 1:00 a.m., defendant and Delgado bumped into each other, spilling Delgado's beer onto both of them. Delgado believed defendant had bumped into him intentionally. Defendant shoved Delgado, and he shoved her back. Accounts differ as to what happened next.

According to Delgado, after the initial shoving, he asked defendant, "what the fuck is your problem?" He could not hear exactly what defendant then said but believed she was saying that she was going to "fuck [Delgado] up." Delgado told defendant to step away and, when she continued pushing him, he told her that he could "take her down in

---

3    The camera appears to have been partially obscured by artificial cobwebs, hung in the bar as Halloween decorations.

five seconds." Delgado testified that defendant was aggressive throughout the encounter, while Delgado himself remained calm.

According to defendant, after the initial pushing, Delgado said, "what the fuck is your problem, fucking bitch?" to which defendant replied, "my fucking problem is you just spilled beer on me." Thereon, the two again exchanged shoves, with Delgado threatening that he could "take [defendant] down in five seconds." Defendant testified she was scared of Delgado because he was bigger than she was.

Both defendant and Delgado agree, however, that they were then separated by other bar patrons, and both returned to their respective groups. None of the other witnesses saw this initial confrontation, although the two groups were only separated by about 25 to 30 feet.

Delgado testified that defendant next began to make rude and insulting gestures at him from across the bar, mouthing "I'm going to fuck him [Delgado] up" and, to Delgado's mind, "telling [him] to go over there." Delgado's friends each testified that they also saw defendant looking angry and gesturing at them from across the bar. Defendant, however, denied making any such gestures or yelling anything at Delgado. Both defendant and Delgado agree that Delgado made an inquisitive gesture with his hands, which Delgado classified as meaning "[W]hat do you want? What's your problem? What have I done?" and which defendant took to mean "[W]hat the fuck?"

C. *Second Confrontation*

About five minutes after the initial confrontation, Delgado walked across the bar and approached defendant. Delgado testified that he was curious why defendant was upset and that he wanted to talk to her. Delgado claimed that, as he approached

4

defendant, he again raised his hands in an inquisitive gesture and calmly asked defendant what her problem was. Defendant testified that Delgado "charged" at her from about eight feet away with his hands raised in a boxing stance.

At some point while Delgado was approaching defendant and her group, defendant turned to her companions and said something. Defendant claimed she said, "Watch. This fucker is coming over. I don't trust him." However, two of her companions testified they heard defendant say something to the effect of, "Watch what I'm going to do to this fucker" or "Watch me fuck this dude up."

Once Delgado reached defendant, she struck him in the head with a pint glass, shattering the glass. Defendant claimed that Delgado had swung at her first. Although two of her companions testified they saw defendant strike Delgado with the glass, neither saw Delgado swing at defendant beforehand.

Delgado testified that, after being struck with the pint glass, defendant faced him in a boxing stance. Delgado next grabbed defendant by her collar and punched her repeatedly until restrained by bar security. Once Delgado was restrained, defendant fled the bar.

Delgado was released by bar security after they were advised by bystanders that he was the victim. He was escorted from the bar, where he flagged down a police officer. He was then transported to a local trauma center, where he received 40 stitches to close wounds on his face and neck, including one that had exposed his parotid gland. At the time of trial, he continued to experience pain from his injuries.

D. *Proceedings*

Defendant contacted police five days after the altercation with Delgado, when her companions and bar staff told her the police wanted to speak to her. She was arrested in early November, was charged with the two counts described *ante*, and was tried before a jury in June 2013.

After closing argument, the trial court instructed the jury, with, among other CALCRIM instructions, a slightly modified version of CALCRIM No. 3470, as follows: "Self-defense is a defense to assault and battery. The defendant is not guilty of those crimes if she used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if, one, the defendant reasonably believed that she was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; two, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger; and three, the defendant used no more force than was reasonably necessary to defend against that danger. Belief in future harm is not sufficient no matter how great or how likely the harm is to be, the defendant must have believed there was imminent danger of bodily injury to herself. [¶] Defendant's belief must have been reasonable and she must have acted because of that belief. The defendant is only entitled to use that amount of force that a reasonable person believes is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense. [¶] When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable,

6

the danger does not need to have actually existed. [¶] The slightest touching can be unlawful if it is done in a rude or angry way. Making contact with another person including through his or her clothing is enough. Touching does not have to cause pain or injury of any kind. The defendant's belief that she was threatened may be reasonable even if she relied on information that was not true. However, defendant must actually and reasonably have believed that the information was true. [¶] The defendant is not required to retreat, he or she is entitled to stand his or her ground in defending himself or herself and if reasonably necessary to pursue the assailant until the bodily injury is passed. This is so the safety could have been achieved by retreating. [The] People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden you must find the defendant not guilty of assault and battery."

The court also instructed the jury as follows with a slightly modified version of CALCRIM No. 3471: "A person who engages in mutual combat or who starts a fight has a right to self-defense only if one, she acted and in good faith tried to stop fighting; two, she indicated by word or by conduct to her opponent in a way that a reasonable person would understand if she wanted to stop fighting and that she had stopped fighting; and three, she gave her opponent a chance to stop fighting. [¶] If the defendant meets these requirements . . . she then had a right to self-defense if the opponent continued to fight. [¶] A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

7

The record shows defendant requested the court to instruct the jury that, when considering whether defendant's actions were reasonable, it could consider antecedent threats made by Delgado against defendant (referring to Delgado's statement that he could "take [defendant] down in five seconds").  The court refused.  Defendant also objected to modified CALCRIM No. 3471 being given to the jury.

As noted, the jury returned a guilty verdict on both counts and made true findings on all allegations.  The court sentenced defendant to seven years imprisonment but stayed that sentence in lieu of three years of formal probation, with 270 days of electronic monitoring.

DISCUSSION

I

Alleged Instructional Error

We review alleged instructional error de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  "In reviewing a claim of instructional error, the ultimate question is whether 'there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner.'  [Citation.]  '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'  [Citation.]  'Moreover, any theoretical possibility of confusion [may be] diminished by the parties' closing arguments . . . .'  [Citation.]  "'Jurors are presumed to be intelligent, capable of understanding instructions and applying them to the facts of the case.'"  [Citation.]"  (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220.)  "Instructions should be interpreted, if possible, so as to support

8

the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

A. *Antecedent Threats*

Defendant contends that the trial court erred in refusing to instruct the jury that it could consider Delgado's prior threat against defendant in determining if her use of force was reasonable.

At trial, the record shows defendant asked the court to include another bracketed portion of CALCRIM No. 3470, which would have read: "[I]f you find that Tomas Delgado threatened or harmed the defendant in the past you may consider that information in deciding whether the defendant['s] conduct and beliefs were reasonable." The court refused, reasoning that the threat was contemporaneous with the altercation and that the instruction was therefore inapplicable. The court was also concerned that the instruction might mislead the jury, suggesting to them that defendant and Delgado had a personal history previous to the night of the incident.

Generally, a defendant making a self-defense claim is entitled, upon request, to a pinpoint jury instruction on the effect of the victim's antecedent threats against the defendant. (*People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1663.) However, we are not aware of any case (nor has defendant cited any) where the antecedent threat instruction was held proper for threats contemporaneous with the argued use of force in self-defense.

Here, the record shows the jury was instructed to "consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed" when determining if defendant's conduct was reasonable. Moreover, the record shows defense

9

counsel, in closing argument, urged the jury to consider Delgado's threatening language as a factor in determining the reasonableness of defendant's fear of Delgado. We thus conclude a further instruction, separately directing the jury to consider specific aspects of the circumstances surrounding the altercation, would have been duplicative and unnecessary. (See *People v. McCowan* (1978) 85 Cal.App.3d 675, 679 [recognizing that trial courts are not required to give jury instructions that are repetitious of other instructions or are argumentative].)

Defendant contends that such an instruction was necessary to inform the jury that defendant may have been justified in acting "more quickly"[4] in light of Delgado's prior statement. This argument is unavailing. Grammatically, "more" is a comparative and necessarily refers to two separate conditions. In any event, we take defendant's proposed instruction to mean that defendant could have been justified in acting more quickly, given the perceived prior threat, than she would have been without it. But the same would have been true of other possible conditions that night (i.e., defendant may have been justified in using force "more quickly" than she would have been had Delgado not approached her or had he been physically smaller than she was).

The jury, in determining the reasonableness of defendant's actions in self-defense, undoubtedly weighed all the circumstances then known to defendant, as it was instructed and as defense counsel argued, and rejected that defense. We thus conclude it would have been improperly argumentative for the court to separately instruct on each piece of

---

[4]     "Someone who has been threatened or harmed by a person in the past is justified in acting more quickly or taking greater self-defense measures against that person." (CALCRIM No. 3470.)

evidence weighing for or against a party's theory of the case (see *People v. McNamara* (1892) 94 Cal. 509, 512 & *People v. Wright* (1988) 45 Cal.3d 1126, 1135), and, therefore, a separate instruction on Delgado's supposed threat was unnecessary.[5]

B. *Reasonable Force*

Defendant next contends that CALCRIM No. 3470 incorrectly states the elements of self-defense because it instructs the jury that, to avail herself of the right of self-defense, the defendant could use "no more force than was reasonably necessary to defend against that danger." Defendant reads this to hold self-defense to a strictly objective standard (defendant could use no more force than was *actually* necessary to defend against an *existing* threat) rather than the correct standard for self-defense (defendant used no more force than she reasonably believed was necessary to defend against a *perceived* threat, whether or not that threat actually existed).[6]

We conclude this reading of CALCRIM No. 3470 is unreasonable. Taken in context with the other two elements of self-defense, "that threat" clearly refers to the "imminent danger of suffering bodily injury or . . . of being touched unlawfully" as it reasonably appeared to defendant. Indeed, in the following two paragraphs, CALCRIM

5       In light of our decision, we conclude it is unnecessary to decide the People's alternate contention that Delgado's words were not a threat but merely a factual observation.

6       The proper standard is whether the conduct was objectively reasonable from defendant's subjective point of view. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065 [in deciding if self-defense was reasonable "the test is objective, [but] reasonableness is determined from the point of view of a reasonable person in the defendant's position"].) As defendant correctly recognizes, a valid claim of self-defense "'"does not depend upon the existence of actual danger but rather depends upon appearances."'" (*Id*. at p. 1068.)

11

No. 3470 explicitly instructs that "[t]he defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation" and that "[i]f the defendant's beliefs were reasonable, the danger does not need to have actually existed."

As such, we conclude that CALCRIM No. 3470 correctly states the elements of self-defense.  (See *People v. Hernandez* (2011) 51 Cal.4th 733, 747 [citing CALCRIM No. 3470 as an accurate recitation of the elements of self-defense].)

C.  *Mutual Combat*

Defendant also contends that the court erred in instructing the jury on mutual combat, arguing that there was no evidentiary foundation for that instruction, and that its inclusion "told the jury that [defendant] did not have a right to self-defense unless she had indicated by words or conduct that she wanted to stop fighting."  Defendant relies on *People v. Ross* (2007) 155 Cal.App.4th 1033 (*Ross*) for the rule that it is error for a court to instruct on mutual combat where the evidence does not support such a legal theory.[7] *Ross*, however, is distinguishable from the case at bar, and we do not agree that the mutual combat instruction was in error.

In *Ross*, the defendant had been arguing with a woman when she slapped him, whereon defendant punched her, breaking her cheekbone.  The *Ross* trial court erroneously instructed the jury on mutual combat.  The Sixth District Court of Appeal declared that, for a mutual combat instruction to be appropriate, "there must be evidence

---

7     It is interesting to note that, while the *Ross* court found the inclusion of the mutual combat instruction to be erroneous, it opined that such error alone would likely have been harmless if the jury had been properly instructed on the *meaning* of "mutual combat" (a consideration not present in the instant case).  (*Ross*, *supra*, 155 Cal.App.4th at p. 1056.)

12

from which the jury could reasonably find that both combatants actually consented or intended to fight before the claimed occasion for self-defense arose." (*Ross*, *supra*, 155 Cal.App.4th at p. 1047, italics omitted.)  The court noted it "is not merely the combat, but the preexisting intention to engage in it, that must be mutual." (*Id*. at p. 1045, italics omitted.)  The *Ross* court decided that a slap in the face was "hardly the way one initiates serious hand-to-hand combat" and therefore was not sufficient evidence of a preexisting intent to fight.  (*Id*. at p. 1053.)

Here, there was evidence from which a reasonable juror could infer an implied agreement to fight.  Defendant and Delgado, just minutes before, had been involved in a confrontation.  Several witnesses testified that defendant continued to make insulting gestures at Delgado from across the bar area while mouthing threats.  Two witnesses from defendant's *own* group testified that, as Delgado approached defendant, she invited them to watch, saying something to the effect of, "Watch what I'm going to do to this fucker" or "Watch me fuck this dude up."  On these facts, a jury could easily infer that defendant was eager for a fight and was inviting Delgado to engage in combat.  Indeed, Delgado testified he believed defendant's behavior meant she was "telling [him] to go over there."

By the same argument, Delgado can be said to have accepted such an invitation when he approached defendant (charging at her in a fighting stance, according to defendant).  Indeed, defense counsel made a similar argument in closing argument.[8]  By

---

8    "Where is the confusion there?  You [Delgado] just had a scuffle with somebody, you had a beer spilt on you, you see the person motioning at you flipping you off and then mouthing I'm going to fuck you up and you're well, I'm confused, I'm going to walk on over there and just clear it up.  No.  I suspect he was going over there to confront her.

13

defendant's own testimony, she believed Delgado wanted to fight her, and a jury could easily infer that, based on her threatening and insulting conduct toward Delgado, defendant was inviting Delgado to such a fight.

In any event, if the jury did not find mutual combat, by its own language CALCRIM No. 3471 would not apply. That is, the duty to communicate peaceful intent applies only to "[a] person who engages in mutual combat or who starts a fight." (CALCRIM No. 3471.) It would therefore be inapplicable to defendant if the jury did not find that she had engaged in mutual combat. "[J]uries are said to ignore irrelevant instructions." (*Ross*, *supra*, 155 Cal.App.4th at p. 1055 [noting that this principle did not apply in *Ross* because of other error]; See *People v. Rollo* (1977) 20 Cal.3d 109, 123 [instructing on irrelevant point "is usually harmless, having little or no effect 'other than to add to the bulk of the charge'"].)

Indeed, the trial court in the instant case instructed the jury with CALCRIM No. 200, which states: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." We thus conclude the jury was not mislead by the inclusion of CALCRIM No. 3471, even *if* it found that defendant did not engage in mutual combat.

---

Maybe not physically. But at least verbally. No confusion here. This was going to be a confrontation."

14

## II

## Great Bodily Injury Enhancement

Section 12022.7, subdivision (g) provides in part, that "[s]ubdivisions (a), (b), (c), and (d) [of section 12022.7] shall not apply if infliction of great bodily injury is an element of the offense." As both parties now seem to agree, the section 12022.7, subdivision (a) enhancement was alleged with respect to count 1 (assault with a deadly weapon) but *not* with respect to count 2 (battery with serious bodily injury). Because serious bodily injury is not an essential element of assault with a deadly weapon (*People v. Smith* (1981) 122 Cal.App.3d 581, 586), section 12022.7, subdivision (g) does not apply here, and the great bodily injury enhancement was therefore properly alleged as to count 1 only.

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

NARES, J.

15