Filed 12/5/24  P. v. Daniels CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEBRAH MARIELEAH DANIELS,<br><br>    Defendant and Appellant. | E082771<br><br>(Super.Ct.No. RIF2301077)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge. Affirmed.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury acquitted defendant and appellant Debrah Marieleah Daniels of attempted murder but found her guilty on two counts of assault with a firearm and one count of discharging a firearm with gross negligence. All these charges arise from a single incident, when Daniels intervened in a fight involving her adult granddaughter. The trial court sentenced Daniels to 10 years.

Daniels argues the prosecution failed to prove she was not acting in lawful self-defense and defense of her granddaughter. She also argues the trial court abused its discretion by imposing the middle term for her sentence instead of the low term, because it failed to give adequate weight to mitigating factors and improperly considered certain facts as aggravating. We affirm, as substantial evidence supports the jury's decision Daniels was not acting in lawful self-defense or defense of another, and there was no prejudicial sentencing error.

FACTS

In March 2023, Daniels' granddaughter Shamya Daniels (S.D.) was 20 years old. S.D. worked for a security company. Two of the people S.D. had supervised as a shift lead were 18-year-old Tyjaih Powers and 20-year-old Tianna Ferguson. Powers and S.D. did not get along. In February or early March 2023, after seven or eight months of working together, Powers and S.D. had a verbal argument that culminated in an exchange of "fighting words." Powers was first suspended, and then fired from the security company. S.D., too, was fired from the security company.

2

Powers and S.D. continued to communicate, exchanging text messages and phone calls that escalated again to mutual invitations to fight. The renewed fighting words did not include threats expressly involving weapons. Powers, for example, threatened to "beat [S.D.'s] ass" and said she did not care if she went to jail for doing so.

On March 19, 2023, Powers and Ferguson, who were friends, went to the shopping center in Moreno Valley where S.D. was working security for a new employer. Ferguson had a small pocketknife on her keychain. Powers had no weapons. At trial, Powers denied she went to the shopping center to fight S.D. Ferguson, however, testified that she anticipated there would be a fight between Powers and S.D., and intended to "record the fight if it happened" using her phone.

When Ferguson and Powers arrived at the shopping center, they saw S.D. driving in the parking lot in a security truck. Powers and S.D. began "yelling" at one another, at first from the open windows of their vehicles. Powers exited Ferguson's car, and the argument continued—Powers estimated for about 20 minutes—and escalated. S.D. and Powers agreed to fight once S.D. got off work, in about 30 minutes, and S.D. drove away.

While Powers was waiting for S.D., she went to S.D.'s personal car, which was parked in the shopping center parking lot, and stood on its hood briefly before getting back into Ferguson's car. Meanwhile, S.D. called several people for help, including her boyfriend and her grandmother, Daniels.

Soon, Daniels arrived and parked near Ferguson's car. Another car, driven by S.D.'s boyfriend and with S.D. as a passenger, also stopped nearby without pulling into a

3

parking space. Daniels got out of her car and walked quickly toward Powers and Ferguson, who got out of their vehicle as Daniels approached. Daniels told Powers that if she "touch[ed]" her granddaughter, she was "going to die."

As Daniels and Powers exchanged words, Ferguson approached S.D.'s boyfriend, who was standing outside the passenger side of his car, where S.D. was still sitting. Ferguson started talking "trash" to S.D., trying to "get her attention." Soon, all four— Daniels, Powers, Ferguson, and S.D.'s boyfriend—came together in a heated conversation, then pushing and shoving. Ferguson struck Daniels with either a slap or a punch, though S.D. believed Powers had struck Daniels. S.D. then got out of the car and started punching Powers, who punched back.

Moments after S.D. and Powers began fighting one another, Daniels pulled out a semiautomatic handgun and fired a shot into the air. Powers and Ferguson turned and started to run away. Daniels and S.D. pursued them, with Daniels pointing the gun at them.

Daniels caught up to Ferguson near the store's garden center and struck her with the gun, causing a cut on her neck. Daniels then followed Powers back out to the parking lot. While running away, Powers tripped and fell. S.D. and Daniels approached Powers and stood over her. Daniels struck Powers in the face with the gun twice, told her she "wasn't playing," and fired a shot into the ground nearby.

4

The operative second amended information (information) charged Daniels with one count of attempted murder (Pen. Code[1], §§ 664, 187, subd. (a), count 1), three counts of assault with a semiautomatic firearm (§ 245, subd. (b), counts 2, 3, and 5), and one count of discharging a firearm with gross negligence (§ 246.3, subd. (a), count 4). The People alleged as to count 1 that Daniels personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and personally used a firearm in committing counts 2, 3, and 5 (§ 12022.5, subd. (a)). The People also alleged several aggravating factors, specifically, that Daniels' prior offenses were "numerous or increasing in seriousness" (Cal. Rules of Court[2], rule 4.421(b)(2)), that she engaged in conduct showing "a serious danger to society" (rule 4.421(b)(1)), and that she "was armed with or used a weapon" during the offenses (rule 4.421(a)(2)).

The People dismissed count 3 during trial. The jury acquitted Daniels of attempted murder (count 1) but convicted her on the remaining counts (counts 2, 4, and 5) and found true the enhancements alleged as to counts 2 and 5. Daniels waived a jury trial on aggravating factors, and the court found the three alleged aggravating factors true. The court also found two additional aggravating factors applied, namely, that the crime involved "great violence" or "threat of great bodily harm" under rule 4.421(a)(1) and that Daniels had served a prior term in prison or county jail under rule 4.421(b)(3). The court found five mitigating factors applied, namely, the crime "was committed because of an

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Undesignated rules references are to the California Rules of Court.

unusual circumstance, such as great provocation, that is unlikely to recur" (rule 4.423(a)(3)); the criminal conduct was "partially excusable for some . . . reason not amounting to a defense" (rule 4.423(a)(4)); the defendant had an "insignificant record of criminal conduct, considering the recency and frequency of prior crimes" (rule 4.423(b)(1)); application of an enhancement could result in a sentence over 20 years (rule 4.423(b)(10)); and multiple enhancements were alleged in a single case (rule 4.423(b)(11)).

The probation report stated section 1170, subdivision (b)(6)(A) may apply, as Daniels reported being a victim of childhood sexual abuse.[3] According to the probation report, "sufficient information to confirm that such trauma was a contributing factor" in Daniels' current offenses "could not be obtained." Nevertheless, at sentencing, the court stated that the "presumptive term" was the low term, apparently applying section 1170, subdivision (b)(6)(A). It did not, however, find the low term to be the "appropriate term." The trial court sentenced Daniels to 10 years, consisting of the middle term of six years on count 2 plus four years for the firearms enhancement of that count. The court imposed the same middle term sentence for count 5 and its enhancement, as well as a low term of 16 months for count 4, but stayed those terms per section 654.

---

[3] Section 1170, subdivision (b)(6)(A) provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" in certain circumstances, including where the person experienced "childhood trauma, including . . . sexual violence."

6

DISCUSSION

A. *Self Defense/Defense of Another*

Daniels argues her convictions should be reversed "because there is uncontroverted evidence she acted in self-defense and to defend her granddaughter." Her characterization of the evidence is inaccurate.

"To justify conduct that would otherwise be an assault [or another offense] on grounds of self-defense [or defense of another], a defendant '"must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him [or her, or someone else]."'" (*People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 212 (*Cruz-Partida*).) "The threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.'" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065.) Thus, a person is entitled to pursue an assailant only until the danger of bodily injury has passed. (See, e.g., *People v. Hardin* (2000) 85 Cal.App.4th 625, 634, fn. 7 (*Hardin*) [defendant's right to use deadly force in self-defense ended after defendant disarmed a frail and much older victim]; *People v. Smith* (1981) 122 Cal.App.3d 581, 590 (*Smith*) ['"When the danger has passed and the attacker has withdrawn, there can be no justification for the use of further force'"]; accord *People v. Collins* (1961) 189 Cal.App.2d 575, 588 (*Collins*) [self-defense may include pursuing an assailant until the victim "has secured himself from danger *if that course . . . appears reasonably necessary*" (italics added)] .)

The prosecution bears the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense or defense of another. (*Cruz-Partida*, *supra*, 79 Cal.App.5th at p. 212.) Our review is for substantial evidence. (*Ibid.*)

Viewed in the light most favorable to the judgment, both witness testimony and video evidence support the conclusion that, assuming Daniels perceived an imminent threat of bodily injury, that belief was unreasonable. After the initial exchange of fisticuffs, and once Daniels brandished her gun and fired a shot into the air, both Powers and Ferguson were trying to run away, not inflict any further bodily harm. Nevertheless, Daniels pointed her gun at them, chased them down, pistol whipped them both— including striking Powers as she was on the ground after tripping and falling—and discharged her gun into the ground near Powers. Thus, the jury had ample basis in evidence to reject Daniels' claim of self-defense, as a reasonable person would have known any imminent threat had dissipated and no pursuit or further use of force was reasonably necessary. (See *Hardin*, *supra*, 85 Cal.App.4th at p. 634, fn.7; *Smith*, *supra*, 122 Cal.App.3d at p. 590; *Collins*, *supra*, 189 Cal.App.2d at p. 588.) Alternatively, the jury reasonably could have concluded from the circumstances that Daniels did not honestly perceive any imminent threat of bodily injury, but rather was acting to demonstrate she "wasn't playing" when she threatened Powers was "going to die" if she "touch[ed]" S.D.

As well, the jury reasonably could have concluded Daniels did not limit her use of force to an amount that was reasonable under the circumstances. At bottom, Daniels

brought a gun to a fist fight.  (See *People v. Enriquez* (1977) 19 Cal.3d 221, 228 ["an assault [with fists] does not justify the use of a deadly weapon in self-defense"], disapproved on another ground in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3; see also *People v. Ross* (2007) 155 Cal.App.4th 1033, 1056-1057 [citing cases holding the use of lethal force in response to simple assault was excessive or unreasonable].) Ferguson had a small pocketknife on her key chain, but there is no evidence she ever brandished it or otherwise used it, or that Daniels even knew it was there.  Nevertheless, Daniels threatened lethal force by pointing her gun at Powers and Ferguson and discharging it in their vicinity, albeit into the air or into the ground.  Daniels also escalated the degree of non-lethal force among the combatants when she used her gun as a club.

Daniels' emphasis on Powers and Ferguson's actions instigating and initiating the confrontation is misplaced.  "If a person attacked defends himself so successfully that his attacker is rendered incapable of inflicting injury, or for any other reason the danger no longer exists, there is no justification for further retaliation." (*People v. Gleghorn* (1987) 193 Cal.App.3d 196, 202.)  Here, as discussed, the jury reasonably could conclude Daniels continued to use force to defend against a perceived danger that a reasonable person would have recognized no longer existed, that she used an excessive degree of force in doing so, or that her intent was to retaliate against Powers and Ferguson rather than to defend against an imminent threat.

Daniels' invocation of authority involving different facts is unpersuasive. For example, in *Collins*, *supra*, 189 Cal.App.2d at p. 575, the court of appeal considered a murder defendant's claim he had acted in self-defense against an attempted rape. While being held down on a bed, the defendant had grabbed a wine bottle and struck the decedent until the decedent "'let go,'" at which point the defendant "'ceased to strike him.'" (*Id.* at pp. 589-590.) The court of appeal found the evidence compelled a finding the defendant had acted in lawful self-defense, because the decedent was about to commit a felony against the defendant and there was "imminent danger of its being accomplished." (*Id.* at p. 592.) We do not face a "similar issue," as Daniels would have it. The evidence here at least supports—indeed, arguably compels—the conclusion Daniels did not stop using force even after any imminent danger Powers and Ferguson posed to Daniels and her granddaughter had dissipated. *Collins* remains a correct statement of the law, but that law leads to a different conclusion on our facts.

We do not suggest that Powers and Ferguson were blameless here. "It would be generous to say that [their] conduct left much to be desired." (*People v. Eulian* (2016) 247 Cal.App.4th 1324, 1334.) Nevertheless, substantial evidence supports the jury's conclusion that Daniels did not act in lawful self-defense or defense of another in committing her conviction offenses.

B. *Sentencing*

Daniels argues that "four of the five aggravating factors the court considered were improper." She asserts it was error to consider the two aggravating factors—described in

rules 4.421(a)(1) and 4.421(b)(3)—that were not alleged in the information.  She also argues it was error to "consider[] [Daniels'] use of a firearm as an aggravating factor to impose the middle term because use of a firearm was an element of the offenses in counts 2, 4, and 5," as well as the personal firearm use enhancement of counts 2 and 5.  In her view, the trial court committed this dual use error in applying rule 4.421(a)(1), (a)(2), and (b)(1).  Finally, she argues the factor described in rule 4.421(b)(3) does not apply here because she served time in county jail for misdemeanor convictions, and not a felony under section 1170, subdivision (h).  She concludes from these purported errors that the presumed low term was "required" (bolding and capitalization omitted) or at least "it would be very likely the court would impose the presumed low term" without the errors, so we should either remand for the trial court to reconsider Daniels' sentence or "in the interest of justice to avoid further delay . . . simply impose the low term."

We find only the argument about her prior misdemeanor convictions as an aggravating factor has merit, and that error was harmless.[4]

1. *Aggravating Factors*

Citing language in section 1170, subdivision (b)(2), Daniels argues it was error for the trial court to consider aggravating factors not alleged in the information.  We are not persuaded.

---

[4] In the interest of judicial economy, as well as to forestall a habeas petition claiming ineffective assistance of counsel, we exercise our discretion to address Daniels' sentencing arguments on the merits, rather than consider whether she forfeited some of them one way or another, as the People have argued.  (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126.)

11

In 2022, the Legislature amended section 1170 "to provide that the trial court 'shall,' in its discretion impose a sentence 'not to exceed the middle term' (*id.*, subd. (b)(1)) except in the following circumstance: 'The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of' an upper term sentence, and 'the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'" (*People v. Lynch* (2024) 16 Cal.5th 730, 748 (*Lynch*); see § 1170, subd. (b)(2).) "Notwithstanding these provisions, the court 'may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Lynch*, at p. 748; see § 1170, subd. (b)(3).) "At the defendant's request, trial on the aggravating circumstances alleged in the indictment or information 'shall be bifurcated from the trial of charges and enhancements' unless 'evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law.'" (*Lynch*, at p. 748; see § 1170, subd. (b)(2).)

Daniels focuses on section 1170, subdivision (b)(2)'s reference to aggravating circumstances "alleged in the indictment or information." In her view, this clause should be interpreted to require any aggravating factors considered by the court "to be pled and proven." She concedes, however, this argument was expressly rejected in *People v. Pantaleon* (2023) 89 Cal.App.5th 932 (*Pantaleon*). *Pantaleon* interprets the statute to

"require[] bifurcation of trial on certain circumstances in aggravation that are alleged in an indictment or information," but *not* to "require that any circumstances in aggravation be alleged in an indictment or information." (*Pantaleon*, at p. 940.) "'"[W]hen a pleading and proof requirement is intended, the Legislature knows how to specify the requirement.'"" [Citation.] Here, it did not do so." (*Ibid.*)

Daniels argues *Pantaleon* was wrongly decided. Her view is that "the intent of the statute is to require aggravating factors to be pled and proven when more than the presumed term is applied, especially if some of the aggravating factors have been pled, since the defendant had no notice of the additional factors." Our Supreme Court, however, recently rejected the idea that a defendant lacks notice of aggravating factors that are not pleaded: "The probation report and the People's statement in aggravation advised [the defendant] of all the aggravating circumstances that the court could rely upon to impose the upper sentence. All the aggravating circumstances actually relied on by the court have long been set out in the rules of court. (Cal. Rules of Court, rule 4.421.) Parties regularly discuss their presence or absence during plea negotiations and consider them in preparation for a sentencing hearing. In short, [the defendant] had notice of potentially aggravating circumstances, had the opportunity to contest them at the sentencing hearing, and actually did contest [some of the factors]."[5] (*Lynch*, *supra*, 16 Cal.5th at p. 753.)

---

[5] This discussion in *Lynch* is arguably dicta. (See *Lynch*, *supra*, 16 Cal.5th at p. 769 ["Because Lynch was tried and sentenced before section 1170(b)'s latest amendment, this case does not directly present issues of pleading and notice."] Dicta from our

*[footnote continued on next page]*

We agree with *Pantaleon*'s reasoning and conclusion. Daniels' "assertion that [her] sentencing violated a statutory pleading requirement is without merit." (*Pantaleon*, *supra*, 89 Cal.App.5th at p. 940.)

2. *Dual Use*

Daniels argues the trial court committed so-called dual use error as to three of the five aggravating factors the trial court found to apply. The factors at issue are described in rule 4.421(a)(1) (crime involved great violence or threat of great bodily harm), rule 4.421(a)(2) (defendant was armed with or used a weapon), and rule 4.421(b)(1) (defendant engaged in conduct showing "a serious danger to society"). In Daniels' view, these factors should not have been considered because each was based on her use of a gun, which is an element of her assault with a firearm and the personal firearm use enhancement.[6] We disagree with Daniels' analysis.

A court may not "use a fact constituting an element of the offense either to aggravate or to enhance a sentence." (*People v. Scott* (1994) 9 Cal.4th 331, 350; see rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term"].) "A sentencing factor is only an element of the offense . . . if the crime as defined by statute cannot be accomplished without

Supreme Court is not "controlling authority," but it nevertheless "carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic." (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297.) To the extent we are not bound to follow *Lynch* on this point, we are nevertheless persuaded to do so.

[6] Because the court imposed and stayed a low term against Daniels for count 4, there can be no prejudicial error related to aggravating factors for that count.

14

performance of the acts which constitute such factor." (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1262.) Thus, because a perpetrator's use of a firearm is an element of both assault with a firearm and the personal use of a firearm enhancement, that fact on its own may not also be used as an aggravating factor as to either the offense or the enhancement.[7] "However, where the facts surrounding the charged offense [or enhancement] exceed the minimum necessary to establish the elements of the crime [or enhancement], the trial court can use such evidence to aggravate the sentence." (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562.)

On appeal, we review the record to determine whether there is substantial evidence to base the aggravating factor on something *other* than the fact that is an element of the crime or enhancement. (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775.) If the trial court could only have based the aggravating factor on a fact that is an element of the offense or enhancement, then the sentence must be reversed. (*Ibid.*)

For each of the three aggravating factors at issue here, there is substantial evidence of facts to support them beyond the elements of Daniels' offenses and enhancements. Both assault with a firearm and its enhancement for personal use of a firearm were complete when Daniels pointed her firearm at Powers and Ferguson in a menacing manner. (See *People v. Hartsch* (2010) 49 Cal.4th 472, 507-508; *People v. Rivera* (2019) 7 Cal.5th 306, 333.) By also firing her gun into the air and into the ground, as well as

---

[7] The offense of assault with a firearm may properly be enhanced for personal use of a firearm, since *personal* use is an element only of the enhancement, while the offense may be committed vicariously. (See *People v. Ahmed* (2011) 53 Cal.4th 156, 161, fn. 2.)

intentionally clubbing both Powers and Ferguson with the gun, Daniels "exceeded the minimum necessary to establish the elements" of both the offense and the enhancement. (*People v. Castorena*, *supra*, 51 Cal.App.4th at p. 562.) We therefore reject Daniels' argument that the trial court made improper dual use of a fact that was an element of her conviction offenses.

### 3. *Prior convictions*

Daniels argues the trial court erred by considering her prior incarceration in county jail as an aggravating factor under rule 4.421(b)(3). That rule applies when the defendant served "a prior term in prison or county jail under section 1170(h)." (Rule 4.421(b)(3).) Section 1170, subdivision (h), provides for punishment by imprisonment in a county jail for certain *felonies*. Daniels' prior convictions were misdemeanors. As the People concede, "it appears that the aggravating factor listed in rule 4.421(b)(3) is not applicable" to Daniels. The trial court therefore erred when it found rule 4.421(b)(3) applicable.

### 4. *Prejudice*

We have found only a single aggravating factor, regarding Daniels' prior convictions, was improperly applied here. Our question, then, is whether that error was prejudicial. It was not.

To determine whether error by the trial court in relying on an improper aggravating factor requires remand for resentencing, "'the reviewing court must determine if "it is reasonably probable that a result more favorable to the appealing party

16

would have been reached in the absence of the error.'"'[8] (*People v. Avalos* (1984) 37 Cal.3d 216, 233 (*Avalos*), quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.) We must also remand if we cannot determine whether the improper factor was determinative for the sentencing court. (*Avalos*, at p. 233.)

Here, although the trial court recited that Daniels' prior convictions were an aggravating factor under rule 4.421(b)(3), the record shows that factor did not weigh heavily against Daniels. In considering mitigating factors, the court found true that Daniels had an "insignificant record of criminal conduct, considering the recency and frequency of prior crimes" (rule 4.423(b)(1)), commenting that her record "is insignificant as compared to other individuals the Court is sentencing to state prison." In the same vein, although the court denied Daniels' request for probation, the court emphasized that her prior record of criminal conduct, including the recency and frequency of prior crimes (rule 4.414(b)(1)) "definitely" weighed in her favor. Thus, the record shows Daniels' relatively insignificant prior criminal history was not a determinative factor in the trial court's decision to impose a middle term sentence instead of low term. Taking both aggravating and mitigating factors relating to criminal history into account, the trial court apparently considered her prior record to weigh in her favor,

---

[8] Daniels waived her right to jury trial on aggravating factors, and the trial court's misinterpretation of rule 4.421(b)(3), applying it where the defendant previously served time in county jail for misdemeanors rather than a felony, is an error of state law. Thus, the more rigorous prejudice standard applicable to violations of a defendant's Sixth Amendment right to a jury trial on one or more aggravating facts does not apply here. (See *Lynch*, *supra*, 16 Cal.5th 730, 769.)

if anything.  We therefore find no reasonable likelihood she would have received a more favorable sentence absent the court's erroneous finding about the applicability of rule 4.421(b)(3).

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

RAMIREZ

P. J.

CODRINGTON

J.